# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Bennie Gunn, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 15 C 6800 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| Kwame Raoul, ) | |
| Attorney General of the State of Illinois,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

A jury in the Circuit Court of Cook County found Bennie Gunn guilty of being an armed habitual criminal while acquitting him of unlawful possession of a weapon by a felon. The trial court sentenced Gunn to ten years in prison. State courts on direct appeal and in collateral proceedings upheld his conviction and sentence. Proceeding *pro se* and while serving his ten-year sentence, Gunn filed this petition[2] for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

## BACKGROUND

---

[1] Because Petitioner Gunn has been unconditionally discharged from his sentence, under the Advisory Committee Notes on Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Illinois Attorney General, Kwame Raoul, has been substituted as Respondent. As the Advisory Committee Notes explain, he "is in the best position to inform the court as to who the proper party respondent is. If it is not the attorney general, he can move for a substitution of party."

[2] After this petition was filed, Gunn completed his sentence. While it is true that habeas relief is limited to "a person in custody," Gunn was in custody when he filed his petition, "which is all the 'in custody' provision of 28 U.S.C. § 2254 requires." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). Nor will Gunn's completed sentence moot his habeas petition because the Court presumes collateral consequences from his conviction. *See Spencer*, 523 U.S. at 12; *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008).

The Court draws the following facts from the Illinois Appellate Court's opinions on direct appeal and postconviction review. *People v. Gunn*, 2013 IL App (1st) 111164-U (Gunn's Direct Appeal); *People v. Gunn*, 2020 IL App (1st) 162722-U (Gunn's Postconviction Appeal). *See generally Lentz v. Kennedy*, 967 F.3d 675, 678 (7th Cir. 2020) (recitation of facts drawn from state appellate court opinion). The state court's factual determinations are presumed correct, and Gunn does not point to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013).

Acting on a search warrant in late-July 2008, police officers found a handgun in a locked bedroom at a residence on Marseilles Lane in Hazel Crest, Illinois. (Gunn's Direct Appeal, ¶ 3.) A search of the bedroom led to the discovery of items that connected Gunn to the Marseilles residence: a photograph of Gunn with his mother and niece; men's clothing and shoes; and a certificate of title, an Illinois vehicle registration card, two traffic citations issued in mid-July 2008, and a checkbook all of which were issued in Gunn's name with the Marseilles address. (*Id*.; *see* Gunn's Postconviction Appeal, ¶ 4.) Gunn was not present for the search, though three minors were at the residence. (*Id*.) Later that day, officers located and arrested Gunn, who, at the time, was with his girlfriend. (Gunn's Direct Appeal, ¶ 4.) During the arrest, officers retrieved a set of keys, which Gunn acknowledged to be his; the keys opened both the front door to the Marseilles residence and also the bedroom where officers found the handgun. (*Id*.) Gunn was transported to a police station, where he was interviewed by Officers Gutter and Kinella and provided a written statement, explaining that Gunn lived at the Marseilles residence and "occasionally" lived at another address. (*Id.* at ¶ 5.) Though he stated the handgun was not his, he had access to "everything" in the bedroom and knew who owned the gun. (*Id*.)

I.      Gunn's Trial

At trial, Gunn's statement was presented to the jury by the state. Gunn testified at trial and denied stating that he lived at 3553 Marseilles, knew that there was a firearm in the bedroom closet or who owned it, and that he had signed the statement. (*Id.* at ¶ 9.) Gunn testified that, during the timeframe of the search, he lived at a residence on South Carpenter Street. (*Id.*) The checkbook was linked to an outdated account. (*Id.*) The certificate of title, Gunn explained, was for a vehicle that he no longer possessed because it had been previously seized by police. (*Id.*) As for the traffic citations, Gunn testified that he held those documents in his wallet at the time of the search, and so, officers could not have found them in the bedroom at the Marseilles residence. (*Id.*)

Gunn pointed to several other witnesses to discredit any contention that he was connected to the Marseilles residence when officers executed the search warrant. His mother, Ella Lillard, testified that she owned the Marseilles residence and had been renting it to her sister. (*Id.* at ¶ 6.) Lillard claimed that, since 2007, Gunn had been permanently living with her at the South Carpenter address. (*Id.*) At the same time, Lillard explained that Gunn would stay with his girlfriend in University Park and would visit the Marseilles residence to assist his aunt. (*Id.*) But, she added, Gunn did not live at the Marseilles residence at the end of July 2008, when police officers searched the locked bedroom. (*Id.*)

So too, Gunn's girlfriend testified that he lived at the South Carpenter address. (*Id.* at ¶ 8.) Still, Gunn spent most nights with her in University Park. (*Id.*) And, once a month, they would go to the Marseilles residence to help Gunn's aunt. (*Id.*)

Eugene Scott, Gunn's aunt's fiancé, testified that he (Scott) was living at the Marseilles residence when officers executed the search warrant. (*Id.* at ¶ 7.) Scott would stay in the locked bedroom where the handgun was found, keeping the bedroom door locked because Gunn's aunt

instructed him to do so. (*Id*.) As for the men's clothing, he claimed that Gunn offered those items to him when Gunn moved out. (*Id*.) Scott denied having told the State's investigator that Gunn stayed in the bedroom where the gun was found or that Gunn and his girlfriend would spend the night at the Marseilles residence. (*Id*.)

The prosecution's rebuttal case featured several additional witnesses who disputed Gunn's version of events. Officer Beard testified that he issued two traffic citations to Gunn in mid-July 2008, and, at that time, Gunn stated his address was the Marseilles residence. (*Id.* at ¶ 10.) State investigator Thomas testified that, during his interview with Scott, Scott had explained that he occasionally lived at the Marseilles residence but had other home addresses in Illinois and Indiana. (*Id*.) Scott continued, stating that Gunn had a key to the locked bedroom, stayed in that room, and kept his clothes there. (*Id*.)

Gunn's probation officer Francis testified that, during a February 2008 field visit to the Marseilles residence, a female relative confirmed that Gunn lived there. (*Id*.; *see* Gunn's Postconviction Appeal, ¶ 13.) Later that month, Gunn told Francis that he lived at the Marseilles residence. (Gunn's Direct Appeal, ¶ 10.) Gunn informed Francis during 11 other probation status checks—including one on the day before the search warrant was executed—that he lived at the Marseilles residence. Gunn did not tell Francis of his move to South Carpenter until February 9, 2009. (*Id*.; see also State's brief on direct appeal, Dkt 51-3, at 20.)

As the jury deliberated, they submitted six notes to the court. (Gunn's Direct Appeal, ¶ 11.) Most relevant here, the jury sent a note asking whether Gunn had "to know that the gun was present on the premises when he was going in and out assisting his aunt to fulfill constructive possession." (*Id*.) The jury conveyed that it was "seeking clarification of the law of knowingly possessed." (*Id*.) After obtaining the agreement of counsel for the state and Gunn's counsel, the court responded

4

that the jury had been provided the law to assist in its deliberations and requested the jury apply the law to the facts and continue to deliberate. (*Id.*) After about four hours of deliberation, the jury found Gunn guilty of armed habitual criminal and acquitted him of unlawful possession of a weapon by a felon. (*Id.*) The court sentenced Gunn to ten years in prison. (*Id.*)

## II.     Gunn's Post-Trial Proceedings

Gunn directly appealed to the Illinois Appellate Court, which affirmed his conviction and sentence. (Gunn's Direct Appeal, ¶ 17.) He then filed a petition for leave to appeal (PLA), but the Illinois Supreme Court declined to review the case. *People v. Gunn*, 996 N.E.2d 18 (Ill. 2013) (table). Gunn proceeded to challenge his conviction by filing state postconviction petitions in the Cook County Circuit Court, yet it dismissed his collateral attack. (Dkt. 51-21, p. 81.) On appeal, the Illinois Appellate Court, once again, denied any relief. (Gunn's Postconviction Appeal, ¶ 32.) This time, though, Gunn did not file a PLA to the Illinois Supreme Court.

As Gunn litigated his state postconviction petitions, he also filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the Southern District of Illinois. (Dkt. 1.) The petition was transferred to this Court (Dkt. 5 and 6), Gunn filed an amended petition. (Dkt. 16.) The Court then stayed proceedings in this habeas matter pending resolution of his state postconviction proceedings. (Dkt. 15.) The stay was lifted on October 14, 2020, Respondent answered, and Gunn failed to file a reply brief.

Gunn raises seven claims for relief in his instant amended petition (Dkt. 16.):[3]

(A)     The trial court erred in failing to respond to the jury's question about "knowing possession" during deliberations;

---

[3] Gunn presented multiple claims within single headings in his amended habeas corpus petition. (Dkt. 16, pp. 5–7.) Respondent's answer broke out each claim individually and re-lettered them. (Dkt. 50, pp. 9–10.) Respondent's reorganization does not substantively alter Gunn's claims and makes the presentation easier to follow so the Court follows Respondent's formatting.

 (B) Gunn is actually innocent;

 (C) Ineffective assistance of trial counsel for failing to propose a jury instruction in response to the jury's question about "knowing possession;"

 (D) Gunn was not informed of the jury's question about "knowing possession" and denied his right to be present during deliberations;

 (E) Insufficient evidence to sustain Gunn's conviction of armed habitual criminal based on his acquittal of unlawful possession of a weapon by a felon;

 (F) Gunn was denied his right to confront Officer Kinella; and

 (G) Ineffective assistance of trial counsel for failing to call Officer Kinella to testify.

**DISCUSSION**

Respondent contends that this Court should not reach the merits on any but one claim—Claim C. In Respondent's view, Gunn has procedurally defaulted on Claims A–B and D–G because he did not present those claims through one complete round of state court review. And, he argues, the independent and adequate state ground doctrine also procedurally bars this Court from reaching the merits of Claim A. On another point, Respondent also contends that Claims A and B are non-cognizable. In Respondent's view, then, the only claim to reach the merits in Gunn's § 2254 petition is Claim C. But, Respondent explains, Gunn cannot succeed on Claim C because the Illinois appellate court's decision did not "contradict[] or unreasonably appl[y] the Supreme Court's precedents." *Dunn v. Neal*, 44 F.4th 696, 702 (7th Cir. 2022) (cleaned up); *see* 28 U.S.C. § 2254(d)(1).

### I. Procedurally Defaulted Claims

A state prisoner must "exhaust[] the remedies available in the courts of the State" before he may obtain habeas relief in federal district court. 28 U.S.C. § 2254(b)(1)(a). That statutory exhaustion requirement means a petitioner must present his claims to all levels of the Illinois courts "to give the state courts a full and fair opportunity to resolve federal constitutional claims . . . ."

6

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a state prisoner fails to assert his "federal claims in compliance with state procedures, or even raise those claims in state court at all," those claims are procedurally defaulted. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022). This approach honors comity: "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures." *Id.* (cleaned up).

### A. Gunn's Direct Appeal

Gunn directly appealed his conviction to the Illinois Appellate Court on two related issues. He contended that the trial court committed reversible error when, during deliberations, it failed to substantively respond to the jury's question about the law of "knowingly possessed," and that his trial counsel was ineffective for failing to offer an instruction in response to that question. (*Id.* at ¶ 2.) As for the trial court's purported error, the Illinois Appellate Court first concluded that Gunn procedurally defaulted this claim because he invited the error by "acquiescing to the proposed response." (*Id.* at ¶ 13.) The state appellate court went on to explain that, in any event, there was no plain error by the trial court because the evidence was "overwhelming" against Gunn. (*Id.* at ¶ 15.) In addressing his trial-ineffective-assistance claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the court found that Gunn suffered no prejudice, emphasizing once again the overwhelming evidence that Gunn "constructively possessed the weapon." *Id.* at ¶ 16. For that reason, the court found it unlikely that Gunn's "suggested jury instructions would have changed the outcome of his trial." *Id*.

To complete direct review of his conviction, Gunn submitted a PLA to the Illinois Supreme Court on only his trial-ineffective-assistance claim (Claim C in the present petition); he abandoned

7

his trial-court error claim (Claim A in the present petition). (Dkt. 51-2.) The Illinois Supreme Court denied his leave to appeal. *People v. Gunn*, 996 N.E.2d 18 (Ill. 2013) (table).

### B. Gunn's State Postconviction Proceedings

Gunn continued attacking his conviction with a *pro se* postconviction petition filed under Illinois' Post-Conviction Hearing Act, 725 ILCS §§ 5/122-1 to 122-7. In the Cook County Circuit Court, Gunn applied for postconviction relief on a number of grounds, that: (1) he was denied his right to presence during the trial court's discussion of the jury's questions (Claim D in the present petition); (2) the trial court erred when it permitted trial counsel to waive Gunn's presence; (3) he was denied effective trial counsel because counsel withdrew motions to quash arrest and suppress evidence and statements, failed to challenge the search warrant, failed to offer jury instructions (on, among others, "knowingly possessed"), failed to ensure Gunn's presence when the court discussed the jury's notes, and failed to raise certain Fourth Amendment claims including issues with the contours of the search warrant and evidence placing Gunn at the Marseilles residence; (4) a defense witness impeached himself and committed perjury; (5) Gunn could not have been found guilty of armed habitual criminal because the statute does not use the phrase "constructive possession" and no fingerprints were found on the handgun; (6) the Illinois appellate court erred when concluding the evidence was overwhelming yet knowing the jury asked the trial court to clarify a point of law; and (7) Gunn was prejudiced at trial and on direct appeal. (Gunn's Postconviction Appeal, at ¶ 16.)

Afterward, the circuit court appointed counsel, who filed a supplemental petition. (*Id.* at ¶ 18.) Gunn's supplemental claims included that he was denied: (1) his right to presence when he was absent and unable to participate during the trial court's discussions of the jury's notes (again, Claim D in the present petition); (2) effective trial counsel for waiving Gunn's presence during the

8

trial court's discussions of the jury's notes; (3) effective appellate counsel for failing to raise, on direct appeal, Gunn's right to presence claim; and (4) effective appellate counsel for also failing to raise, on direct appeal, a sufficiency of the evidence claim. (*Id.*) The circuit court granted the State's motion to dismiss Gunn's *pro se* petition and his supplemental petition. (Dkt. 51-21, p. 81.)

On appeal, however, Gunn abandoned all of these arguments, instead advancing a claim of ineffective assistance of postconviction counsel. Gunn argued that:

> he was denied the reasonable assistance of postconviction counsel when counsel failed to amend [Gunn's] petition to include a claim that he was denied the effective assistance of counsel when trial counsel "needlessly" impeached him with prior convictions and appellate counsel failed to raise this argument on appeal.

(Gunn's Postconviction Appeal, ¶ 19.) The Illinois Appellate Court affirmed the circuit court's dismissal: It concluded that Illinois law does not require postconviction counsel to "explore or formulate potential claims," *see People v. Davis*, 156 Ill. 2d 149, 163–64 (1993), and that claims not included in his postconviction petition must fail when raised for the first time on appeal. (*Id.* at ¶ 29–31.) Gunn did not file a petition for leave to appeal in his postconviction proceedings.

### C. Gunn's § 2254 Petition

Recall that Gunn raises seven grounds on which he seeks federal habeas relief. As discussed, Gunn asserted a number of claims (at various points) throughout his post-trial proceedings, one that he did, and many that he did not, present in one full round of state court review. Some of those claims Gunn attempts to reassert here. Still, other claims that he now raises were never presented to the state courts in any of his post-trial proceedings. The Court in turn considers each claim in Gunn's § 2254 petition to determine if the claim is preserved for habeas review or otherwise procedurally defaulted.

To begin, on direct appeal, Gunn contended that, during deliberations, the trial court erred in failing to respond to the jury's question about "knowingly possessed" (Claim A). For his part,

9

he also asserted a trial-ineffective-assistance claim for counsel's failure to propose a jury instruction in response to the jury's "knowingly possessed" question (Claim C). But Gunn only raised one claim in his petition for leave to appeal—his trial-ineffective-assistance claim, omitting the trial-court-error claim. And so, Gunn procedurally defaulted on Claim A[4] and preserved Claim C for potential federal habeas relief.

During his State postconviction proceedings, and relevant here, Gunn raised one distinct claim that he also includes in his § 2254 petition. In both his *pro se* and supplemental petitions to the Cook County circuit court, Gunn contended he was denied his right to presence during jury deliberations (Claim D.) On appeal from the circuit court's dismissal of Gunn's postconviction petitions, the Illinois Appellate Court addressed Gunn's novel issue—ineffective assistance of postconviction counsel. In any event, Gunn did not file a PLA, and thus, abandoned his novel issue and all other claims asserted in his two petitions. So too, Gunn procedurally defaulted on Claim D.

---

[4] Interpreting Claim A to mean that the trial court's jury instructions did not comply with Illinois law, Respondent contends Gunn's claim is non-cognizable. The Court agrees. *See Davis v. Greer,* 675 F.2d 141, 144 (7th Cir.1982) ("Of course, if the petitioner's sole claim is that the jury instructions failed to comply with state law, the petition does not state a cognizable federal claim."). And, as discussed, any federal claim Gunn may have had is procedurally defaulted for failing to present such a claim through one full round of state court review. Even if Gunn had preserved Claim A in his PLA, Respondent adds that it would be procedurally defaulted on independent and adequate state grounds. This Court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. *Cone v. Bell*, 556 U.S. 449, 465 (2009) (cleaned up). And, here, this is the case, for the appellate court addressed Gunn's claim on Illinois law of waiver and forfeiture. *People v. Gunn*, 2013 IL App (1st) 111164-U, ¶¶ 12–13; *see Coleman v. O'Leary*, 845 F.2d 696, 701 (7th Cir. 1988) ("We hold that the Illinois Appellate Court's ruling with respect to invited error rests on an independent and adequate state procedural ground."); *see also Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010) ("We consistently have held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits.").

Gunn raises several other claims in his § 2254 petition that he neither asserted on direct appeal nor in his State postconviction proceedings. These claims include actual innocence (Claim B), insufficiency of the evidence (Claim E), right to confront Officer Kinella (Claim F), and trial-ineffective-assistance for failing to call Officer Kinella to testify (Claim G). Having failed to present any of these claims in one complete round of his State post-trial proceedings, however, Gunn procedurally defaulted on Claims B,[5] E, F, and G.

### D.      Excuse

Two exceptions to procedural default may save claims that are otherwise barred for review in a federal habeas court. The Court can excuse petitioner's default if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also House v. Bell*, 547 U.S. 518, 536 (2006). To establish cause for a default, petitioner must show that "some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). An external impediment that may sufficiently show cause for default includes, among others, "constitutionally ineffective assistance of counsel." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). On the other hand, a fundamental miscarriage of justice will excuse a default but "only in the rare case where the petitioner can prove that he is

---

[5] The State also contends that Claim B should be denied not only because it is procedurally defaulted but also claims of actual innocence are non-cognizable as freestanding claims in a federal habeas court. (Dkt. 50, p.11.) And, again, the Court agrees with the state's assessment of non-cognizability. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). As the Court will explain, though, it considers Gunn's actual innocence claim in the context of excuse for procedural default.

11

actually innocent of the crime of which he has been convicted." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). This extremely high bar "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 1. Cause and Prejudice

Generously interpreting Gunn's petition, he asserts an all-encompassing trial-ineffective-assistance claim to excuse his defaulted claims. (Dkt. 16, p. 7.) Gunn, though, only preserved a trial-ineffective-assistance claim based on a single narrow issue—counsel's failure to propose a jury instruction in response to their question about the law of "knowingly possessed." In broad terms, a trial-ineffective-assistance claim is treated as a "single ground for relief." *Pole v. Randolph*, 570 F.3d 922, 934 (2009) (cleaned up). But under that approach, petitioner still must pinpoint each factual basis and assert it at all levels of state courts for such a claim to avoid procedural default. *Id.* at 935. That means Gunn's preserved trial-ineffective-assistance claim (on a single issue) does not help to excuse his defaults on other myriad issues. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (failing to assert a specific ground of ineffective counsel leads to procedural default).

### 2. Actual Innocence

While the Court agrees with the State that Gunn is unable to present a standalone claim of actual innocence, for completeness, the Court will consider whether it can excuse his defaults. To support his actual innocence claim, Gunn offers a single piece of evidence—a letter presumably authored and signed by a cousin (yet neither dated nor sworn to) to show that Gunn did not live at the Marseilles residence during the period when the officers executed the search warrant. But his

12

one letter falls well short of the heavy burden to prove his innocence with new and reliable evidence. *Schlup*, 513 U.S. at 324. Even if the Court assumes the reliability of Gunn's cousin's letter, the baseline question becomes: is the material new and "was [it] not presented at trial"? *Id*. That answer is no.

Start with the letter's three pertinent facts: It states Gunn was not present at the Marseilles residence on the day of the search, had not lived at the Marseilles residence since 2007, and lived at the South Carpenter address. The defense presented other evidence of these propositions at trial. It was undisputed at trial that Gunn was not present during the search. A State's Investigator testified that, other than three juveniles, no one else was present at the Marseilles residence on the day of the search. (Dkt. 51-13, p. 101.) As to Gunn's residence, his mother testified that Gunn had lived at the South Carpenter address since 2007. She also testified that Gunn did not live at the Marseilles residence on the day of the search. And Gunn's girlfriend testified, too, that he lived at the South Carpenter address. The jury also heard directly from Gunn who testified that, during the timeframe of the search, he lived at the South Carpenter address. Not only is the single letter not the type of material that *Schlup* envisions, but also Gunn cannot present the same trial facts with a different witness and call it new evidence. *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A] prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim."); *Gomez v. Jaimet*, 350 F.3d 673, 680 (7th Cir. 2003) ("We agree with the Eighth Circuit that merely putting a different spin on evidence that was presented to the jury does not satisfy the *Schlup* requirements . . . ."). Gunn's "new evidence" falls far short of establishing his actual innocence and does not, then, excuse his procedural defaults.

13

## II. Trial-Ineffective-Assistance Claim for Failing to Propose a Jury Instruction

In this case, Gunn preserved only one claim for federal habeas review. Recall that, on direct appeal, Gunn's PLA asserted a trial-ineffective-assistance claim—that his trial counsel was ineffective for failing to offer an instruction in response to the jury's question about the law of "knowingly possessed" (Claim C). And so, the Court will proceed to the merits of Claim C.

Federal habeas relief exists for Gunn's trial-ineffective-assistance claim if he can show that the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established United States Supreme Court precedent, or the state court made an unreasonable determinate of fact. 28 U.S.C. § 2254(d). A state court's ruling on the federal habeas claim unreasonably applies governing Supreme Court law if it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). So long as this Court is "satisfied that the [state appellate court] took the constitutional standard seriously and produce[d] an answer within the range of defensible positions," habeas relief is unavailable. *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019). Petitioner has the burden of showing that the state court's decision was unreasonable. *Harrington*, 562 U.S. at 98–99.

A state prisoner may attempt to show that his trial counsel was ineffective in violation of the Sixth Amendment to obtain habeas relief. To succeed on a trial-ineffective-assistance claim, he must show that "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. As for prejudice, petitioner must show "a reasonable probability" that, but for the claimed errors of counsel, the trial outcome "would have been different." *Id.* at 694. Stated another way, after considering the totality of the evidence presented to the jury, this approach asks whether "the defendant has met the burden of showing

14

that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. The bar is high, though, because this Court "proceed[s] on the assumption that the [state appellate court] is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695.

The Illinois Appellate Court concluded that Gunn did not suffer prejudice because of any failure by trial counsel to offer a responsive jury instruction to their question during deliberations. (Gunn's Direct Appeal, ¶ 16.) In doing so, it addressed only prejudice under *Strickland*, finding that the weight of trial evidence overwhelmingly supported that Gunn constructively possessed the handgun. (*Id.*); *see Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). And the appellate court suggested that Gunn's proposed instruction would have had little effect, if any, on the result at trial. (Gunn's Direct Appeal, ¶ 16.) Here too, the Court does not need to evaluate Gunn's claim beyond *Strickland*'s prejudice element because the appellate court's decision lies well within "the boundaries of permissible differences of opinion." *Corcoran v. Neal*, 783 F.3d 676, 683 (7th Cir. 2015).

The appellate court explained:

> Illinois law makes clear that for a defendant to be found guilty of constructive possession of a weapon, the State must prove beyond a reasonable doubt that the defendant (1) had knowledge of the presence of the weapon; and (2) had immediate and exclusive control over the weapon. . . . The State's evidence showed that defendant knew the weapon was in the closet as shown by defendant's statement to Officers Gutter and Kinella. Gutter testified that defendant signed the statement. According to the statement, defendant informed the police that he lived at 3554 Marseilles, he knew the gun was in his room, he had the key to the room, and he kept his clothes and shoes in the room. Although defendant's statement says that the gun belonged to someone else, defendant's statement unequivocally provides that defendant knew of the gun's presence in his room.

15

> Additionally, the State presented several items of evidence establishing defendant's residency at 3554 Marseilles. This evidence included two traffic citations issued to defendant just two weeks prior to the execution of the search warrant which indicated defendant's home address was the Marseilles home. Officer Beard testified that he issued the citations to defendant and that defendant provided the Marseilles address as his home address. Defendant's probation officer, Debra Francis, testified that she verified defendant's home address and that on several meetings with defendant between February 2008 and September 2008, defendant informed her that his home address was the Marseilles home. It was not until February 2009 that defendant told Francis that he moved to 11320 South Carpenter in Chicago. Although defendant describes the evidence as closely balanced, it was, in fact, overwhelming despite the defense witnesses' testimony that defendant did not reside at the Marseilles address. . . .

(Gunn's Direct Appeal, ¶¶ 14–15.)

This Court shares the view of the appellate court that the evidence convincingly showed that Gunn constructively possessed the handgun, and thus, Gunn's proposed jury instruction would not show a reasonable probability of a different outcome. *See Watson v. Anglin*, 560 F.3d 687, 693 (7th Cir. 2009) ("Strong evidence of guilt can undermine a petitioner's claim that he was prejudiced by his attorney's errors."). And even if this Court did not agree with the state court's assessment that Gunn was not prejudiced by his trial counsel's failure to propose additional instructions in response to the jury's question about the law of "knowingly possessed" was unreasonable. The evidence of Gunn's possession of the firearm was strong, notwithstanding the contrary testimony of his mother, common law uncle, and girlfriend. As the state appellate court pointed out, evidence cannot be deemed "closely balanced" solely because the trier of fact has to assess the credibility of competing witnesses. (Gunn's Direct Appeal ¶ 15, citing *People v. Lopez*, 2012 IL App (1st) 101395, ¶ 88). The existence and quality of corroborating evidence should also be, and was, considered and it strongly supported the testimony of the state's witnesses.

16

The Court notes as well that the jury acquitted Gunn of the only charge that requires proof that a defendant "knowingly possessed" a firearm. The trial court instructed the jury on two charges: "A person commits the offense of unlawful possession of a weapon by a felon when he, having been previously convicted of a felony, *knowingly possesses* in his abode a firearm." (Dkt. 51-15, p. 44) (emphasis added). "A person commits the offense of armed habitual criminal when he, having been previously convicted of a total of two or more times of a qualifying felony as defined by the Armed Habitual Statute in the State of Illinois possesses a firearm." (Dkt. 51-15, p. 46.) As the appellate court referenced, one of the jury's questions during deliberations asked: "'[d]oes Bennie Gunn have to know that the gun was present on the premises when he was going in and out assisting his aunt to fulfill constructive possession. We are seeking clarification of the law of *knowingly possessed*.'" *People v. Gunn*, 2013 IL App (1st) 111164-U, ¶ 11 (emphasis added). The jury acquitted Gunn of unlawful possession of a weapon by felon—the only one of two charges where knowingly possesses is a required element of the offense and is most closely related to the jury's question. This buttresses the Court's view that trial counsel's failure to propose a jury instruction did not prejudice Gunn and his proposed instruction would not show a reasonable probability of a different result on the charge of which he was convicted. *See, e.g.*, *United States v. Powell*, 469 U.S. 57, 65 (1984) (explaining courts will not override a jury's inconsistent verdicts, an imprudent task, which "often are a product of jury lenity"); *United States v. Podhorn*, 549 F.3d 552, 561 (7th Cir. 2008) ("The refusal to give an instruction removing an insufficiently supported theory from the jury's consideration does not provide an independent basis for reversing an otherwise valid conviction.") (cleaned up).

Accordingly, the Court concludes that Gunn has not shown that the Illinois Appellate Court's decision rejecting Claim C on the merits was unreasonable.

### III. APPELLATE RIGHTS AND CERTIFICATE OF APPEALABILITY

This is a final judgment. If Gunn seeks to appeal this decision, he must file a notice of appeal in this Court within 30 days of the date this opinion is entered on the Court's docket. *See* Fed. R. App. P. 4(a)(1). Gunn need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. If, however, he contends that this Court should reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

The Court declines to issue a certificate of appealability since Gunn cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree with, this Court's resolution of his claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2)); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If Petitioner seeks to appeal, he must seek a certificate of appealability from the United States Court of Appeals for the Seventh Circuit. *See* 28 U.S.C. § 2253(c)(1).

IV. CONCLUSION

For the reasons stated, Gunn's petition for writ of habeas corpus is denied. The Clerk of Court is directed to: (1) substitute Kwame Raoul, the Illinois Attorney General, as Respondent in place of Jason Garnett; (2) alter the caption of this case to *Gunn v. Raoul*; and (3) enter judgment against Gunn. Any other pending motions are denied. Civil case terminated.

Date: October 17, 2022

John J. Tharp, Jr.
United States District Judge